UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LUZ E. FELICIANO-RODRIGUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.

Civil No. 10-1228 (JAF)

**OPINION AND ORDER**

Plaintiff petitions this court under 42 U.S.C. § 405(g) to review the decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff's application for disability benefits. (Docket No. 2.) Commissioner files a memorandum defending Commissioner's denial (Docket No. 11), and Plaintiff files a memorandum challenging it (Docket No. 12).

**I.**

**Background**

We derive the following facts from the transcript of the record in this case ("R."). Plaintiff was born on November 3, 1962. (R. at 49.) She received her high-school diploma. (Id.) She worked for nineteen years at El Dorado Beach Hotel—first as housekeeper and then as assistant manager in charge of the hotel restaurant—until May 2006, when the hotel ceased operations. (R. at 51–53, 292.) Plaintiff claims that she stopped working due to depression and

Civil No. 10-1228 (JAF)                                                                                                              -2-

back pain. (R. at 51.) On June 13, 2007, Plaintiff applied for Social Security disability benefits. (R. at 33.) She claimed that she was disabled under the Social Security Act ("Act") on account of her high blood pressure, depression, anxiety, kidney stones, multiple sclerosis, hypoglycemia, and pain in her neck, shoulders, and back. (R. at 117.)

On January 29, 2008, Commissioner determined that Plaintiff was not disabled and, accordingly, was not entitled to disability benefits under the Act. (R. at 33, 117–20.) Plaintiff requested reconsideration of the determination and, on May 9, 2008, Commissioner affirmed the denial. (R. at 33, 95–96, 252–53.)

On June 10, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. at 33, 254–58), which took place before ALJ Gilbert Rodríguez, on January 20, 2009 (R. at 46–62). Plaintiff attended the hearing with counsel and testified regarding her alleged disability. (Id.) On the basis of that testimony and evidence discussed below, the ALJ rendered a decision on April 20, 2009, determining that Plaintiff is not disabled and denying her benefits under the Act. (R. at 33–44.) On March 31, 2009, Plaintiff requested review of the ALJ decision from the Appeals Council (R. at 23–26) and, on February 24, 2010, the Appeals Council denied her that review (R. at 1-4). Finally, on March 17, 2010, Plaintiff filed the instant case for judicial review of Commissioner's decision. (Docket No. 2.)

## II.

## Standard of Review

An individual is disabled under the Act if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

We must uphold Commissioner's decision if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence de novo. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). In reviewing a denial of benefits, the ALJ must have considered all evidence in the record. 20 C.F.R. § 404.1520(a)(3). Credibility and "[c]onflicts in the evidence are . . . for the [ALJ] — rather than the courts — to resolve." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). We reverse the ALJ only if we find that he derived his decision "by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**III.**

**Analysis**

Plaintiff contends that the ALJ erred in assessing her residual functional capacity ("RFC") by determining, without the aid of a vocational or medical expert, that she can perform her past relevant work. (Docket No. 12 at 10–18.) She argues that the ALJ, in doing so, "cited only the evidence favorable to the Commissioner, to the disregard of the overwhelming evidence to the contrary." (Id. at 17.) We analyze this contention below with respect to each ALJ determination unfavorable to Plaintiff, namely that (1) among her various ailments, only her depression and neck and back conditions constitute severe impairments; (2) none of her severe impairments, nor any combination of them, meets or equals a listed impairment; and (3) her RFC permits her to perform her past relevant work.

**A.     Severe Impairments**

Of the several ailments from which Plaintiff suffers, the ALJ found that only her depression and her neck and back pain—caused by cervical and lumbar osteoarthritis and lumbar levoscoliosis—are severe. (See R. at 16-17.) This constitutes a finding by the ALJ that Plaintiff's other impairments do not "significantly limit [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Specifically, the ALJ concluded that Plaintiff's other physical impairments do not affect her ability to walk, stand, sit, lift, push, pull, reach, carry, or handle. § 404.1521(b). On review, we must determine whether substantial evidence supports this conclusion.

Plaintiff does not specifically challenge the ALJ's finding that her other physical impairments were not severe. (Docket No. 12.) In fact, in 2007, Plaintiff explicitly pointed to her mental limitations and her neck and back pain as the root of her inability to work. (R. at 314–21.) She did so again in 2008. (R. at 328–34.) In addition, at the ALJ hearing, Plaintiff claimed that her mental problems and back pain were what rendered her unable to work. (See R. at 51.)

The ALJ concluded that there was no medical evidence in the record suggesting that Plaintiff's other physical impairments affected her ability to work. (R. at 35–36.) Having reviewed all medical records as to her physical impairments during the relevant time period (R. at 79–85, 93–94, 99–101, 130–38, 166–68, 182, 185, 186, 423–25, 428–29, 434–39, 446–49, 517–25, 527, 529–37), we agree and determine that substantial evidence supports the ALJ's conclusion.

**B.     Meets or Medically Equals a Listed Impairment**

The ALJ concluded that Plaintiff's depression and neck and back conditions, while severe, do not meet or medically equal a listed impairment. (R. at 36–37.) On review, we must determine whether substantial evidence supports that conclusion.

**1.     Physical Impairments**

The ALJ explained that Plaintiff's cervical and lumbar conditions fail to meet a listed impairment because "the record fails to reveal sensory or reflex loss, motor loss, and atrophy or muscle weakness." (R. at 36.) The Code of Federal Regulations ("Code") lists the spinal

Civil No. 10-1228 (JAF) -6-

conditions to which we compare Plaintiff's. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.04. This listing requires that a plaintiff display a spinal disorder, such as osteoarthritis, "resulting in compromise of a nerve root . . . or the spinal cord" plus (1) evidence of nerve-root compression accompanied by sensory or reflex loss and, if the lower back is involved, a positive straight-leg raising ("SLR") test, id. at 1.04A; (2) spinal arachnoiditis, id. at 1.04B; or (3) lumbar spinal stenosis resulting in the inability to ambulate effectively,[1] id. at 1.04C.

There is no evidence that Plaintiff suffers from spinal arachnoiditis, and there is evidence, including from Plaintiff's treating physician, that Plaintiff had no limitation as to walking (see, e.g., R. at 100, 167 (describing Plaintiff's gait as "normal").) While Plaintiff suffers from cervical and lumbar pain, we agree there is no evidence in the record of nerve-root compression or of sensory or reflex loss. (See, e.g., id. (describing "sensory" and "reflexes" as "normal").) Thus, we find that substantial evidence supports the ALJ's determination that Plaintiff's neck and back conditions do not meet a listed impairment.

**2.  Mental Impairment**

Section 404.1520a describes a particular technique the ALJ must apply to assess a claimed mental impairment. See 20 C.F.R. § 404.1520a(a) (describing need for special technique). In determining that a plaintiff suffers from a severe mental impairment, an ALJ

---

[1] The Code defines the "inability to ambulate effectively" as the inability to walk "without the use of a hand-held assistive device." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 1.00B2b.

Civil No. 10-1228 (JAF)                                                                                                        -7-

must make a specific finding as to the degree of limitation in each of four functional areas.[2] The ALJ uses those same ratings later, when deciding whether a plaintiff's severe depression meets or medically equals a listed mental disorder. At this second application of the ratings, however, the ALJ need only determine that a plaintiff's severe depression does not result in extreme—or "marked"—limitation in at least two of the four functional areas.[3]

In the case at hand, the ALJ found that Plaintiff has "mild" difficulties with activities of daily living; "moderate" difficulties with social functioning and concentration, persistence, or

---

[2] An ALJ deciding whether a plaintiff suffers from a severe mental impairment first must determine whether the plaintiff has a medically-determinable impairment and, if so, must both "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment" and "rate the degree of functional limitation resulting from the impairment." § 404.1520a(b). The ALJ must so rate as to four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3). The ratings for the first three areas are based on a five-point scale (none, mild, moderate, marked, and extreme); the rating for the fourth area is based on a four-point scale (none, one or two, three, four or more). § 404.1520a(c)(4). If the ALJ rates the limitation in the first three functional areas as "none" or "mild" and in the fourth area as "none," the ALJ generally will conclude that the impairment is not severe. § 404.1520a(d)(1). Otherwise, the ALJ must continue the analysis by determining whether the impairment meets or is equivalent in severity to a listed mental disorder and, if so, assessing the plaintiff's RFC. § 404.1520a(d)(2), (3). The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." § 404.1520a(e)(2).

[3] To determine that a plaintiff's depression neither meets nor is equivalent in severity to the listed mental disorder, the ALJ has to find that the plaintiff's impairment does not match the criteria in either (1) paragraphs A and B of a particular section in the Code of Federal Regulations, 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04; or (2) paragraph C of same. See 20 C.F.R. §§ 404.1520a(d)(2), 404.1525. For a plaintiff's impairment to match the criteria in paragraph B, the ALJ has to determine that the plaintiff's limitation is "marked" in at least two of the four areas of functional capacities. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04B. For a plaintiff's impairment to match the criteria in paragraph C, the ALJ has to determine that the plaintiff experienced (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. See 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, 12.04C.

Civil No. 10-1228 (JAF)                                                                                                -8-

pace; and no episodes of decompensation. (R. at 36–37.) On review, we need only determine whether substantial evidence supports the ALJ's determination that Plaintiff's limitation is not "marked" in at least two of the four categories. See supra note 2 and accompanying text.

The ALJ's ratings are no less favorable to Plaintiff than those of the consulting physicians who submitted mental evaluations in this case. The first of two such evaluations, submitted in 2007, reported that Plaintiff's mental impairment was severe but not expected to last longer than twelve months. (R. at 496–99.) It also reported the following ratings: mild, mild, mild, none. (Id.) The second evaluation, dated 2008, reported ratings that mirror those of the ALJ. (R. at 551–70.) It contains a detailed explanation of the consulting doctor's observations, specifically that there are "no objective findings that indicate any gross cognitive deficits." (R. at 553.) He also noted that Plaintiff's "pharmacological treatment does not represent that of a severe condition" and that Plaintiff could, inter alia, "adequately complete a normal workweek and workday." (Id.)

The ALJ also considered the findings of Plaintiff's treating and examining physicians. (R. at 36–37.) Upon review of the record, we find that he accurately recited said findings and that substantial evidence supports his decision to weigh them as he did. (See id.; R. at 63–37, 102–06, 160–64, 496–99, 597–98.) Further, we find that the record, on the whole, contains sufficient evidence to support the ALJ's finding that Plaintiff experiences no more than moderate limitations in the first three categories and none in the fourth. (See id.) With the ALJ's ratings in mind, and with no evidence that Plaintiff's condition meets the criteria outlined

in paragraph C, as defined supra note 3, we find that substantial evidence supports the ALJ's finding that Plaintiff's mental impairment neither meets nor medically equals a listed impairment.

### C.  Residual Functional Capacity and Ability to Perform Past Relevant Work

To conclude, finally, that Plaintiff is not disabled, the ALJ first had to assess Plaintiff's RFC and then use that assessment to determine whether Plaintiff could perform her past relevant work or, if not, nevertheless adjust to other work. See 20 C.F.R. §§ 404.1520(e), 404.1520a(d)(3), 404.1545, 404.1560–.1569a. Section 404.1545 guides the ALJ's assessment of RFC, which is defined as "the most [one] can do despite [one's] limitations." § 404.1545(a)(1). The ALJ must use "all of the relevant medical and other evidence" to assess RFC. § 404.1545(a)(3); see also § 404.1545(c) (describing evidence relevant to mental limitations). Section 404.1529 guides the ALJ's evaluation of symptoms and their effect on a plaintiff's capacity for work. See, e.g., § 404.1529(c), (d)(4).

Referencing relevant regulations, the ALJ found that Plaintiff retains the physical ability to perform "medium" work and the mental ability "to learn, understand, remember, and carry out simple work instructions, maintain attention and concentration for two hour periods without undue interruptions, perform as per schedule and routine, appropriately interact with supervisors, co workers, and others, and can adequately complete a normal workweek and workday." (R. at 38; see generally R. at 38–43 (stating basis for that conclusion).) He reviewed Plaintiff's self evaluations and discussed their consistency with the actual treatment Plaintiff

Civil No. 10-1228 (JAF)                                                                                                         -10-

received, progress notes from her treating physicians, and the frequency of her visits to those physicians. (R. at 38–43.)

As to Plaintiff's physical impairments, the ALJ noted her treating physician's 2008 report, which noted "normal" neurologic functioning (R. at 100) and no limitation of movement in her extremities (R. at 101). He gave weight to Plaintiff's examining physician, whose observations he found consistent with the treating physician's progress notes and treatment and who concluded that Plaintiff had a normal range of motion with "no difficulty to sit, walk, speak, hear, lift, carry, and handle objects or travel." (R. at 40; see also 519–21 (examining physician's report).) In light of those reports, the ALJ relied on the "expert medical opinion" of the consulting physician who opined that Plaintiff's RFC was for medium work. (R. at 40; see also 529–37 (consulting physician's report).) We agree and find this consistent with Plaintiff's testimony and self reports, which focus on her mental limitations when discussing her inability to work. (See, e.g., R. at 61, 107–16, 172–79.)

As to her mental impairment, the ALJ detailed the conclusions of Plaintiff's treating, examining, and consulting physicians. (R. at 40–43.) He also reviewed the credibility of her self evaluations and testimony in light of her treatment and, inter alia, interactions with him at the ALJ hearing. (Id.) Having reviewed the relevant medical evidence (R. at 63–67, 102–06, 160–64, 496–99, 501–15, 551–70, 597–98), we conclude that substantial evidence supports the ALJ's conclusions as to her residual mental capacity for work.

Civil No. 10-1228 (JAF)                                                                                                                   -11-

Next, the ALJ had to determine whether Plaintiff, given her particular RFC, can perform past relevant work. See §§ 404.1520(f), 404.1560(b). The ALJ may but need not use a vocational expert to aid this determination. § 404.1560(b)(2). The ALJ found, without the aid of a vocational expert, that Plaintiff can perform her past relevant work. (R. at 43.) Upon review of Plaintiff's work history evidence (see, e.g., R. at 300–02), and given our finding as to the ALJ's assessment of Plaintiff's RFC, supra, we find that substantial evidence supports the ALJ's finding that Plaintiff can perform her past relevant work. We, therefore, uphold the ALJ's attendant conclusion that Plaintiff is not disabled.

## IV.

## Conclusion

In view of the foregoing, we hereby **AFFIRM** Commissioner's determination. We **DENY** Plaintiff's petition (Docket No. 2) and **DISMISS WITH PREJUDICE** all claims therein.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 3rd day of March, 2011.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge